UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAA ELKHARWILY,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>FIRST INTERSTATE BANK et al.,<br><br>　　　　　　　Defendants. | CASE NO. 3:24-cv-05720-DGE<br><br>ORDER ON PENDING MOTIONS<br>(DKT. NOS. 98, 106, 109) |

　　　　Presently before the Court are Plaintiff Alaa Elkharwily's Motion for Default Against LPSL Corporate Services Inc. (Dkt. No. 98), Motion for Telephonic Hearing (Dkt. No. 106), and Motion for Alternative Service (Dkt. No. 109).

**I.　　Motion for Default Against LPSL Corporate Services Inc. (Dkt. No. 98)**

　　　　Plaintiff argues Defendant LPSL Corporate Services Inc. ("LPSL") was properly served with the original Complaint on August 30, 2024 and with the summons issued by the Clerk's office on September 16, 2024.  (Dkt. No. 98 at 2.)  Plaintiff contends Defendant did not answer or otherwise respond to the Complaint by October 7, 2024.  (*Id.* at 3.)

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 1

1     "Upon motion by a party noted in accordance with [Local Civil Rule] 7(d)(1) and
2 supported by affidavit or otherwise, the clerk shall enter the default of any party against whom a
3 judgment for affirmative relief is sought but who has failed to plead or otherwise defend." Local
4 Civil Rule 55(a). "The affidavit shall specifically show that the defaulting party was served in a
5 manner" authorized by Federal Rule of Civil Procedure 4. *Id.*

6     Defendant LPSL argues it was under no obligation to respond to the original Complaint,
7 which was not accompanied by a summons. (Dkt. No. 103 at 3.) Defendant argues its obligation
8 to answer in this case was triggered by Plaintiff's filing and service of his Second Amended
9 Complaint along with the court-issued summons on September 16, 2024. (*Id.*) Defendant argues
10 that after the Court issued its order striking Plaintiff's Second Amended Complaint, there was no
11 properly served complaint to which Defendant could respond, and that one did not exist until the
12 Court issued its order on October 17, 2024 granting Plaintiff's motion for reconsideration and
13 reinstating Plaintiff's Second Amended Complaint. (*Id.* at 3–4.) Defendant contends Plaintiff's
14 motion for reconsideration did not stay the effect of the Court striking the Second Amended
15 Complaint, and that once the Court re-instated the Second Amended Complaint, Defendant filed
16 a motion to dismiss 18 days later. (*Id.* at 4–5.) Defendant LPSL notes that the Court denied
17 Plaintiff's motion for default against Defendant First Interstate Bank, which is, for purposes of
18 the motion for default, situated identically to LPSL. (*Id.* at 6.)

19     LPSL is correct that it is situated identically to First Interstate Bank, and the Court
20 DENIES Plaintiff's motion for default against LPSL for the same reason:

21         Given the procedural circumstances in this case, Defendant could
        not reasonably be expected to respond to a stricken Complaint which
22         may or may not have been re-instated by Court order. In filing a
        motion to dismiss for failure to state a claim, Defendant has filed a
23         timely defense to Plaintiff's Second Amended Complaint, given that
        a motion to assert such a defense "must be made before pleading if
24

a responsive pleading is allowed." Fed. R. Civ. P. 12(b). By filing a motion to dismiss within 21 days of the existence of an operative complaint to which it could react, Defendant avoided the possibility of the default.

(Dkt. No. 95 at 6.)

## II.     Motion for Telephonic Hearing (Dkt. No. 106)

On the afternoon of January 6, 2025, Richard Wylie, an attorney purporting to represent Plaintiff "in matters other than the one on which [Defendants] are dealing with him" emailed opposing counsel to inform them that Plaintiff was "facing a serious and unforeseen medical emergency" that arose earlier that day. (Dkt. No. 106 at 22.) Mr. Wylie informed Defendants' counsel that Plaintiff would be unable to meet the January 6, 2025 deadline to respond to their motion to dismiss, and requested Defendants "stipulate to an order for a continuance or extension of the deadline to respond, as permitted under local rule 7(j)." (*Id.*) Mr. Wylie requested a continuance "of at least two weeks." (*Id.* at 23.)

On January 7, 2025, Defendants' counsel responded to Mr. Wylie, acknowledging receipt of his email, but requesting additional information, "given the procedural history of this case and the fact that the email [came] from an individual who does not represent the Plaintiff" in this case. (*Id.* at 20.) Defendants' counsel requested: 1) proof of hospitalization and 2) information about when Plaintiff would be able to participate in this litigation. (*Id.* at 21.)

Plaintiff emailed opposing counsel on January 7, 2025, informing them he was transferred to the hospital by ambulance on the afternoon of January 6, 2025 due to arrhythmia and angina. (*Id.* at 17–18.) Plaintiff attached to the email two pages of a fact sheet printed on January 6, 2025, which Plaintiff allegedly received upon his discharge from the hospital, and which contained information concerning heart palpitations. (*Id.* at 13–14.) Defense counsel

responded to Plaintiff's email the same day, stating the information provided did "not substantiate a basis for delaying the court-ordered deadlines." (*Id.* at 17.)

On January 8, 2025, Plaintiff filed a motion for a telephonic hearing pursuant to Local Civil Rules 7(j) and 7(i). (Dkt. No. 106.) Plaintiff requests the hearing to seek an extension of time to respond to the motion to dismiss filed by LPSL and First Interstate Bank. (*Id.* at 1–2.) Plaintiff contends that he developed symptoms stemming from "longstanding uncontrolled hypertension" on January 4, 2025 and was hospitalized for arrhythmia and angina on January 6, 2025. (*Id.* at 2.) The deadline for Plaintiff to respond to the motion to dismiss was January 6, 2025. (Dkt. No. 95 at 7.) Plaintiff contends he is currently undergoing further cardiac monitoring and evaluation, which is expected to take between four and six weeks, during which time he "must remain free from stimulants and stress." (Dkt. No. 106 at 2–3.) Plaintiff also seeks additional time to retain local counsel to assist him with his case. (*Id.* at 3.)

Under Local Civil Rule 7(i), "[u]pon the request of any party, and with the court's approval, a motion may be heard by telephone without the filing of motion papers . . . [w]hether such telephonic motions will be considered, what procedural requirements will be imposed, and the type of relief granted are within the sole discretion of the court." Under Rule 7(j), "[i]f a true, unforeseen emergency exists that prevents a party from meeting a deadline, and the emergency arose too late to file a motion for relief from the deadline, the party should contact the adverse party, meet and confer regarding an extension, and file a stipulation and proposed order with the court . . . [i]t is expected that if a true emergency exists, the parties will stipulate to an extension."

In response to Plaintiff's motion, Defendants note the documents submitted by Plaintiff describe "heart palpitations" rather than arrhythmia. (Dkt. No. 107 at 3.) Defendants argue that

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 4

none of the information submitted indicates Plaintiff cannot engage in his own litigation, suggests he must remain free of stress, or indicates that his condition will require four to six weeks of monitoring and evaluation. (*Id.*) Defendants argue the information submitted by Plaintiff does not even substantiate that he was in fact hospitalized. (*Id.*) In his reply, Plaintiff submits additional documentation to support his allegations, including a photograph of an individual Plaintiff claims is him in a hospital bed, which Plaintiff claims was taken on January 7, 2025, and two pages of a fact sheet given to Plaintiff after a January 9, 2025 doctor's visit where he was treated for blood pressure, "[u]nstable angina pectoris", "[p]alpitation" and other conditions. (Dkt. No. 108 at 27–32.)

None of the materials submitted by Plaintiff substantiate his claims that he suffered a "true, unforeseen emergency" that prevented him from meeting the deadlines in this case. There is insufficient evidence that Plaintiff was hospitalized for the conditions he alleges, and no evidence from a physician or other medical source indicating that Plaintiff is unable to participate in this case.[1]

The Court notes that Plaintiff has, in the past, cited his health problems in seeking extensions. On November 13, 2024, Plaintiff requested "an extension of the deadline to file [his] reply [regarding his motion for default] to Friday, November 25, 2024, as an accommodation for [his] disability." (Dkt. No. 86 at 2.) Plaintiff argued he had "two other deadlines to respond to motions in a different case in another court", which left him "unable to get adequate rest, having not slept for two days to meet those deadlines, which exacerbate[d] [his] bipolar disorder and impact[ed] [his] ability to timely respond to the motion." (*Id.* at 3.) Plaintiff submitted no

---

[1] It is noted that the same day Plaintiff filed his reply in support of his motion for a telephonic hearing, Plaintiff separately filed his motion for alternative service on two defendants. (*See* Dkt. Nos. 108 and 109.)

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 5

documentation to substantiate his contentions, and the following day, November 14, 2024, Plaintiff filed his reply.  (Dkt. No. 87.)

Other federal courts have questioned whether Plaintiff's alleged health problems could justify granting an extension of deadlines.  When considering Plaintiff's request for an extension due to "uncontrolled seizures" that required Plaintiff "be exposed to no further stressors at t[he] time", the United States District Court for the Eastern District of Washington noted that it had been made aware

> of a police report averring that Mr. Elkharwily criminally trespassed the Wall Street property in 2023 while under similar medical directives to avoid the stress of litigation . . . and that Mr. Elkharwily has attempted to gain access to the property and harass employees there as recently as May 31, 2024[].  These incidents tend to undercut Mr. Elkharwily's claims of ill health.

(Dkt. No. 21-1 at 3–5.)

As for Plaintiff's contention that he requires additional time to secure counsel, the Court notes that Plaintiff has been proceeding pro se since he filed his complaint nearly five months ago.  While Plaintiff may obtain counsel if he wishes, he may not, at this stage, invoke his need for counsel as a justification for delaying his response to Defendants' motion.

Accordingly, Plaintiff's motion (Dkt. No. 106) is DENIED.

### III.   Motion for Alternative Service (Dkt. No. 109)

Plaintiff requests an extension of 30 days to serve Defendants Matthew Waddell and Jennifer Matson.  (Dkt. No. 109.)  Plaintiff argues that despite diligent efforts, he has been unable to effect service on Waddell and Matson due to their "apparent evasion of service." (*Id.* at 1–2.)  In its order of December 23, 2024, the Court found that Plaintiff had not properly effected service on Waddell and Matson and provided Plaintiff another opportunity to effect service upon Defendants, "in a manner that complies with Rule 4", no later than January 13,

1  2025.  (Dkt. No. 95 at 5.)  Plaintiff asserts he made three efforts to serve Defendants at their
2  shared residence, on January 9, January 11, and January 12.  (Dkt. No. 109 at 2.)  Plaintiff states
3  that no one answered the door, and that he has not received a response from Defendants' attorney
4  to his request to either waive service or arrange a time to serve Defendants.  (*Id.*)

5       Plaintiff also asks the Court to authorize him to effect service by alternate means.
6  Plaintiff asks the Court to permit him to serve Defendants: 1) by certified mail at Defendants'
7  home address, 2) via email to Defendants' attorney, who is "presumably authorized to accept
8  service" on Defendants' behalf, or 3) by posting the summons and complaint at Defendants'
9  residence and mailing copies of the same via regular mail.  (*Id.* at 4–6.)

10       Defendants argue Plaintiff "squandered his first, second-chance" to effect proper service
11  by waiting until three days before the deadline to attempt to serve them.  (Dkt. No. 110 at 1.)
12  Defendants argue they have not been properly served pursuant to Rule 4, and that Plaintiff's
13  failure to effect service on them was due to his delay in attempting to serve them, not any
14  evasion on their part.  (*Id.* at 4–5.)  Defendants note they have accepted documents from a
15  process server on two occasions and offered to waive service if Plaintiff would agree to
16  withdraw his motion for default against them, an offer to which Plaintiff did not respond.  (*Id.*)
17  Defendants argue Plaintiff has not met the burden necessary for the Court to authorize service by
18  publication and that Plaintiff's other proposed service methods are not permitted under
19  Washington law.  (*Id.* at 6–7.)

20       Under Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days
21  after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must
22  dismiss the action without prejudice against that defendant or order that service be made within a

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 7

specified time. But if the plaintiff shows "good cause" for the failure, the court must extend the time for service for an appropriate period.

There are "two avenues for relief" under Rule 4(m). "The first is mandatory: the district court must extend time for service upon a showing of good cause." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). "Good cause to avoid dismissal may be demonstrated by establishing, at minimum, excusable neglect." *Id.* at n.3 (citing *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). In addition to excusable neglect, a plaintiff may be required to show the following factors to bring the excuse to the level of good cause: "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* "The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect." *Id.*

The Court granted Plaintiff an additional 21 days to effect service on Defendants Waddell and Matson after the Court found they had not been properly served. The Court assumes, for the purposes of argument, the existence of excusable neglect on Plaintiff's part, and notes Plaintiff's good faith, albeit somewhat tardy, efforts to effect service. The Court further notes Defendants Waddell and Matson have actual notice of this lawsuit, and have been active participants in this litigation for several months. In this case, any prejudice to Defendants from granting Plaintiff an additional 30 days to effect service would be minimal. *Lemoge*, 587 F.3d at 1196 (prejudice to defendants "requires greater harm than simply that relief would delay resolution of the case.")

The third good cause factor —severe prejudice to plaintiff upon dismissal of his complaint—weighs somewhat against Plaintiff. Under Rule 4(m), a dismissal for untimely service "is required to be a dismissal without prejudice." *United States v. 2,164 Watches, More*

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 8

*or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 776, 773 (9th Cir. 2004). "Such a dismissal ordinarily enables the plaintiff to refile the complaint and effect timely service." *Id.* While refiling the complaint would cause some inconvenience to Plaintiff, it would not be severely prejudicial. Considering all of these factors, the Court finds that good cause exists to extend the deadline to effect proper service by an additional 30 days, and GRANTS Plaintiff's motion for an extension. (Dkt. No. 109.)

The Court DENIES Plaintiff's request for alternative service. Washington allows for service by publication in certain limited circumstances. *See* Wash. Rev. Code § 4.28.100. Here, Plaintiff does not propose to serve Defendants by publication, and none of the circumstances under which an individual can be served by publication appear to apply in this case. Before service by publication can be authorized, a plaintiff must show "the defendant, being a resident of this state, has departed therefrom with intent . . . to avoid the service of a summons, or keeps himself or herself concealed therein with like intent." Wash. Rev. Code § 4.28.100(2). Plaintiff's inability to locate Defendants at their home on three occasions in January does not establish that Defendants have intentionally concealed themselves with the intent to avoid service.

Plaintiff's other proposed alternative service methods are likely not permissible under Washington law or are foreclosed for other reasons; for instance, Defendants' counsel has stated that he is not authorized to accept service on behalf of his clients. (Dkt. No. 110 at 7 n.7.) Accordingly, Plaintiff shall effect service on Defendants Waddell and Matson, in a manner that complies with Rule 4, no later than 30 days from the date of this order.

The Clerk is directed to calendar this event.

Dated this 27th day of January, 2025.

David G. Estudillo
United States District Judge

ORDER ON PENDING MOTIONS (DKT. NOS. 98, 106, 109) - 10